## Case No. 5,058.

ESTATE OF FRANKLIN SAV. FUND SOC.

[31 Leg. Int. 173; 1 10 Phila. 276.]

District Court, E. D. Pennsylvania. May 27, 1874.

BY THE COURT. The amount due by the bankrupt corporation to the depositors, is believed to be $859,000, with accruing interest. The available assets in the actual possession and control of the assignees are estimated by them at $520,000, or about 60 per cent., which is, perhaps, however, a high valuation. I understood one of the assignees to say, in court, that he considered it too high. Assuming its correctness, the probable deficit would be $339,000, or nearly 40 per cent. without any computation of interest. The deficit may be much greater. It is important, therefore, to consider the recourse of the assignees in bankruptcy to other property, which is in the nominal ownership or control of the defaulting treasurer of the bankrupt company.

This property, as he estimates it, is of the value of $284,000. The amount of his debts to others than the company has been very differently stated by him at different times. He now states the amount of those other debts to be, $42,437, of which he represents $25,900 to be unsecured. But $4,200 of the unsecured, and $12,000 of the secured amounts, together $16,200, are alleged to be due to one of the persons whose neglect of duty, when directors of the company, is considered by the assignees to have enabled the treasurer to abstract the funds. The past relations of other alleged creditors may also be such as to render them responsible, in whole or in part, for his defaults. All the claims included in the $42,437 will probably, more or less, for various reasons, require scrutiny. From the papers exhibited, it may be inferred that his estimate of the value of the property as $284,000 is partly speculative and prospective, requiring for its realization two years or more of time, with favorable contingencies. Independently of any rebate for loss of interest from delay, the estimate, being his own, may be very high. But the dependency must, at worst, be very valuable.

The assignees appear to assume that this treasurer's present liability for his embezzlements and other breaches of trust, is only for the amount of the anticipated deficiency of the assets now in possession. Arithmetically, as between the assignees and the depositors, this may not be an incorrect way of considering the matter, because the greatest value of all the property in this person's nominal ownership, as yet discoverable, appears to fall short of the smallest estimate of such deficiency. But, as between the assignees and himself, his legal and equitable relation is altogether different. It is that of primary responsibility for the whole original amount of the funds abstracted, and for the gains and profits, or for interest if the gains and profits cannot be discovered. Under the auxiliary jurisdiction of the circuit court, a suit in equity in that court has already been instituted by creditors against him and others, in which the assignees may become complainants if they have not already done so. In the present stage of that suit, the bill is amendable, as of course, in the clerk's office. The amount of his primary liability, if the assignees limit their demand to the monies fraudulently abstracted with legal interest, is already ascertained by his own written admissions in his examinations in bankruptcy. The lowest primary amount is the sum of the unpaid deposits, less only the few dollars which were on hand at the commencement of the proceedings in bankruptcy. He is not entitled to any credit for pretended investments when made, because none were made honestly in the name of the company. The decree in equity will be primarily for the full pecuniary amount. He will be entitled from time to time to reasonable credits for nett cash when realized by the assignees. But this will not prevent them from issuing execution in the mean time, on the decree, for the unpaid part of the sum primarily due. Such a primary decree will not, nor will, under proper equitable direction, such an execution, preclude the complainants from obtaining, under proper amendments and adaptations of their bill, the further specific relief to which they may be equitably entitled. The property in question may be classed under three heads: (1) Property traceable as investments, products or substitutes of the funds abstracted by him: (2) Property acquired with funds of uncertain source: (3) Property which was acquired by him before any of his embezzlements, or is otherwise provable to have been acquired with funds not of the bankrupt company. Under the first head, all the investments, products or substitutes which are traceable, however often or variously changed in form, or name, can be followed and reclaimed. Under the second head, if, through confusion or obscurity caused or promoted by acts or omissions of the wrongdoer, the tracing or ascertainment becomes difficult, all doubts ought to be resolved against him, as the party putting out the light, or otherwise occasioning the difficulty. Every legal and equitable presumption is against such a party. On this principle the injunctions in the pending suit

1 [Reprinted from 31 Leg. Int. 173. by permission.]

in equity were granted in a general form. Under the third head, the ultimate remedy is by execution only. But the property cannot be put out of reach of an execution. With reference to his debts to other creditors, the case may be considered under the same three heads, but not in the same order of succession. Under the third head, and perhaps also under the second, the recourse of the assignees against such portions of the property as cannot be considered investments or products of, or substitutes for, funds of the company, will be to give to the pending suit the form, in this part of it, of a creditors' bill. As to such property, they will sue therefore, as well on their own behalf, as on that of such of his other creditors as may become parties to the bill, and may establish their respective demands. Under the first head, as to property acquired originally or derivatively with funds of the company, the exclusive right of the assignees cannot be impaired by the existence of the other debts. But, in order to simplify the litigation, the assignees may, as complainants, be willing, perhaps ultimately, to waive, even in this respect, their strict rights. In favor of the fraudulent party himself, these rights of course cannot be waived. Nor can the concession be made by the assignees in favor of his other creditors, unless on reasonable and equitable conditions. But, under such conditions, property which cannot, as between the assignees and this defaulter, be considered his estate, may perhaps be so treated in favor of other creditors, by way of concession, to promote equality and promptness of distribution. In the meantime, the bankrupt law [of 1867 (14 Stat. 517)], would, if there were no injunction, prevent any preferential disposition of his property for the benefit of such other creditors. If he should attempt it, proceedings in bankruptcy against him could be instituted so as to frustrate the attempt. The papers exhibited by the assignees, indicate that he has already threatened, or proposed, such a preferential disposition. This will, under a properly framed amendment of the bill, furnish an additional reason for continuing the injunction till the final hearing of the cause.

The final hearing cannot be long deferred, because the proofs will probably consist almost wholly of admissions by defendants in their own examinations heretofore taken. The assignees now, report that this treasurer of the bankrupts has fully recognized his liability for any deficiency which may be ascertained to exist, and has proposed "to mortgage or assign to them his individual property to meet the same." By "his individual property" is meant of course the property and effects of which he is the nominal owner. In the report of the assignees, they proceed to describe the offer, which appears, by their description of it, and by the suggested form of a deed annexed, to be very different in substance from what the introductory words above quoted might seem to import. It is in essential respects objectionable. He proposes a trust only "to secure the payment of any deficiency that shall be ascertained in the assets of the corporation bankrupts to pay all obligations due by the same." This language of the proposed deed is, to say the least, extremely equivocal on the question whether a primary liability on his part, or only an eventual accountability would be secured. The question whether the trust would be available at all, until the assignees shall have themselves fully accounted for assets already in their possession, would thus be open to litigious contention.

Again, there is to be a compulsory postponement for two years of the definitive execution of the proposed trust. This would be repugnant to the nature of the trust vested in the assignees. They may, indeed, in their discretion, postpone its execution as to subjects requiring delay. But they should not surrender their discretionary power. Their general duty is to make the assets available with the least possible delay. Moreover, the deed provides that the trust is to be saddled, for the two years, with an irrevocable agency of the defaulting treasurer himself. This may, perhaps, not have been intended. The intention may have been only to bind him to render service in such an agency, if it should be required of him by the assignees. If so, the language used would need careful reformation. But I do not think that they ought even to be authorized to delegate any authority whatever to him.

A peculiarly objectionable provision, also proposed, is that which would, on the execution of the deed, release him absolutely from his indebtment and liabilities. If this man, however guilty, should make all the atonement in his power, future forbearance on the part of the assignees might not be improper. If he should make an unconditional assignment or mortgage, of all his nominal and actual estate, for the equal benefit of all his creditors, forbearance might be accorded, unless other frauds be hereafter discovered. But the forbearance ought to be discretionary on the part of the creditors represented by the assignees. I think, however, that such property, nominally his own, as he may effectually transfer, might be credited absolutely to him at once, on account of his debt, at a certain valuation; and this valuation might reasonably be a liberal one. But a release of the excess of the debt, without receiving any equivalent, ought, when we regard the manner in which the debt was incurred, to be considered out of the question. The moral objections are insuperable. But, independently of them, such a release would be impolitic. It would probably embarrass the recourse of the assignees against the company's former directors for neglect of their duty. Such directors might object, that the release was of the party who, having used the funds

which were abstracted, was primarily liable. His son, and his nephew, in whom respectively the legal estate in parts of the property is vested, would, on their executing the proposed deed, be also released from all demands of the assignees. For this the reasons may be sufficient.

Another proposed provision to which I have already, in part, alluded, is that, of the property valued by him, as above, at $284,000, certain portions which he values at $48,000, shall be set apart for the preferential security of the other creditors whose debts he now computes at $42,437. Under this head a separate trust is proposed. Objections to the complexity of this part of the plan are answered in the report. They will not be considered here. The substantial objection is different. It is the preferential character of the proposed security for the exclusive benefit of those other creditors. I have already suggested that, so far as their demands can be established as valid, they ought perhaps to stand on a footing of equality. But why they should be preferred, to the exclusion of the assignees, no reason has been suggested.

Some other objections it is not necessary to specify. They would be consequent, in principle, upon those which have been stated.

The assignees report the proposed arrangement, expressing "their willingness to close with the proposition;" and ask the court's "instruction whether or not they shall accept the same." Here they mistake, I think, the judicial function of which they invoke the exercise. This court of bankruptcy is legislatively made a court of summary equitable jurisdiction over them, and over their trust. Therefore, independently of any special provisions of the bankrupt act, the court could, by way of direction to them, as trustees, decide any question of legal or equitable right, which could be contentiously discussed for opposing interests. But here no such question properly arises. The assignees have power, on their own responsibility, to perform the act in question, unless it would involve a breach of trust. A trustee cannot obtain the direction of a court of equity as to the mere administration of his trust, in matters within his own discretion or power. But assignees in bankruptcy are not simple trustees. They are also in a certain sense, officers of the court of bankruptcy. Therefore, to prevent misconception, I state the objections which suggest themselves. So much for the general question.

The question may next be considered under the bankrupt law. The 17th section enacts that the assignee may, under the direction of the court, submit to arbitration any controversy arising in the settlement of demands against the estate, or of debts due to it; and may, under such direction, compound and settle any such controversy by agreement with the other party as he thinks

proper, and most for the interest of the creditors. There is no other provision of the act which can be cited on the question, and this provision does not apply to it. There is no suit or demand against the estate, and no controversy whatever as to a debt due to it. On the contrary, the report of the assignees expressly affirms that the treasurer unqualifiedly admits his liability for the debt. The only question is an undefinable one, which they seem to apprehend may arise in making available their judicial recourse for an indisputable demand. If the enactment of the seventeenth section applied at all, it would be necessary for the assignees to take unequivocally upon themselves the direct responsibility of recommending the arrangement, as in their opinion, a proper one. This they have not done; and they seem to have advisedly omitted doing it. If they had certified their opinion that it would be proper, and I had been able to take cognizance of the question, I could not have concurred in their opinion.

I do not think, on the mere ground of expediency, that the additional protracted and complex trusts proposed would be likely to relieve the estate from litigations, or to expedite its distribution. I see no reason that a decree in the present suit in equity may not be speedily obtainable. There will, in the mean time, be every facility for occasional interlocutory directions. Nevertheless, it would, of course, be highly expedient that the purposes of that suit should be attained through a proper submission of the guilty defendant. I have already intimated to what extent the assignees, upon his making such imperfect atonement as may still be in his power, might be justifiable in according future forbearance to him. But they should not allow him to impose arbitrary conditions upon those who are sufferers from his delinquencies. Nor should he exact compensation for rendering to the sufferers any service within his power.

It is to be recollected that the questions which have been considered, are entirely unconnected with the collection, disposal, or distribution of the assets now in possession, which are of the estimated value of $520,000. It was admitted, on the argument, that such collection, disposal or distribution of them could not be facilitated or expedited by the proposed arrangement, if it had been carried into effect. I have only to add, that if the estimate of $520,000 is too high, or too low, there should be a reappraisement, in order that the unfortunate creditors may not have incorrect expectations. The assets consist mainly of securities whose value does not, like that of merchandize or stocks, depend upon fluctuations of a sensitive market; and there will, under efficient administration, be no danger of sacrifice.